# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

**EMILIO ACETO &**
**VALERIE ACETO**

**VS.**                                    **CA NO. 1:10-cv-00481-ML-DLM**

**AMERICAN BROKERS CONDUIT,**
**MORTGAGE ELECTRONIC**
**REGISTRATION SYSTEMS, INC.,**
**BAC HOME LOAN SERVICING, LP,**

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF
### OBJECTION TO MOTION TO DISMISS
### BY BAC HOME LOANS SERVICING, LP, and  MORTGAGE ELECTRONIC
### REGISTRATION SYSTEMS, INC.

The purpose of this memorandum of law is to rebut the position taken by the Defendants in their Motion to Dismiss that the Plaintiffs cannot seek relief from this Court based upon their clearly stated and well supported claims of false, fraudulent and statutorily deficient documents, and for reasons contrary to case law, because they are allegedly in default on their mortgage payments and that there is no valid reason for delaying foreclosure.   This is patently untrue and contrary to the law.

Further, the relief sought by the Plaintiffs has been characterized as "sweeping" and based upon an unconnected series of arguments about MERS that appear to be based upon from complaints available on the internet and not on the facts of their loan.  The Defendants' gratuitous comments are well noted but erroneous in all regards.  The relief sought by the Plaintiffs was set forth clearly in their verified complaint.  The arguments relative to MERS are all well supported and documented by case law, law review articles and other scholarly articles that seem to be published on a daily basis.  The fact that the internet is used as a platform from which to download these documents is freely admitted.   For MERS, a company that operates an electronic

secret mortgage society, it seems ironic that it would be concerned about the use of the internet to obtain information about its actual nature and purpose.

The Defendants suggest that the Plaintiffs' ability to challenge wrongful assignments and other entries in the actual land evidence records in Coventry Town Hall in Coventry, Rhode Island is not supported by well settled Rhode Island and Federal Law, and also chafes against the equitable principles that Rhode Island Courts and all Court have traditionally applied when analyzing a litigant's request for equity and equitable relief.

These Plaintiffs have averred and correctly pleaded several claims upon which relief may be granted by this Court. They have been precise in asking the Court, inter alia, to rule that the Defendants, America's Broker's Conduit, MERS and BAC be removed from their record title and that they be declared the sole owner of the subject real estate and be provided with other appropriate relief under the clear and concise provisions of the Rhode Island Declaratory Judgment Act, Chapter 31 of Title 9, and of the Quieting Title Act Contained in Chapter 16 of Title 34, and of the Marketable Title Act contained in Chapter 13.1 of Title 34. The facts alleged as applied to each of the aforesaid acts are sufficient to defeat the Defendants' Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The Defendants' Motion asks this Court to ignore the right of the Plaintiffs under the Laws of the State of Rhode Island relative to their rights in their property to bring the aforesaid actions. The Motion asks this Court to ignore the plain language set forth in the Rhode Island General Laws §34-11-1, §34-11-22, §34-16-1 et seq., §34-13.1-1 et. seq., and §34-9-1 et. seq. By design, the entire MERS[1] system is complex beyond simple description, to the general public, public officials, courts and judges alike. It is wrought by misdirection, confusion and the random appointment of Presidents and Vice Presidents, who are not employees or actual officers, who

may allegedly act on its behalf. In its haste to allow the securitization of loans and then foreclose, many times for an unnamed and unknown beneficiary of a mortgage loan, MERS and its members, like ABC and BAC have overlooked important aspects of state laws throughout the country and particular to this case, the Laws of the State of Rhode Island.

As a result of MERS' failure to comply with the General Laws of the State of Rhode Island and with well settled case law in the State of Rhode Island and the adoption of the MERS' system by these Defendants, the Plaintiffs request this Court deny the Motion to Dismiss or in the alternative, allow for the full development of the factual issues which drive all MERS cases in the State of Rhode Island and abstain from ruling on the Motion to Dismiss at this stage of the case.

## STANDARD OF REVIEW

The Federal Courts, when reviewing a Rule 12(b)(6) Motion, have consistently held that it must take all allegations pled in the Plaintiff's Complaint as true. The Plaintiffs have set forth a multitude of facts that if taken as true, satisfy the dictates of Federal Rule 12(b)(6) for all of the same reasons they satisfy the Rhode Island Superior Court Rule 12(b)(6). In particular, the Plaintiffs have offered uncontradicted evidence, provided to them by BAC, that it does not hold the operative promissory note. Even in light of the Supreme Court's holding in Ashcroft v. Iqbal, 129 S.Ct. 1937, 1951 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), this complaint, when viewed by the Court, with all factual assertions being taken as true, "plausibly suggest an entitlement to relief." Ashcroft, 129 S.Ct. at 1950.

Further, dismissal of a complaint is disfavored and should only be granted in extraordinary cases. "A court ruling on a motion to dismiss construes the complaint in the light most favorable to the Plaintiff, taking all well-pleaded allegations as true and giving Plaintiff the benefit of all reasonable inferences." Figueroa v. Rivera, 147 F.3d 77, 80 (1st Cir. 1998). Dismissal under Rule

12(b)(6) is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The Motion to Dismiss should be denied in respect to any/all of the counts because the facts and causes of action have been pleaded with specificity and not as mere conclusions.

In regard to the Motion to Dismiss under Rule 12(b)(6) of the Rhode Island Rules of Civil Procedure, the standard is that it must be "clear beyond a reasonable doubt that the plaintiff in this case is not entitled to relief from the defendant under any set of facts that could be proven in support of Plaintiff's claim." Hendrick v. Hendrick, 755 A.2d 791 (R.I. 2000) (quoting Bruno v. Criterion Holdings, Inc., 736 A.2d 99, 99 (1999.) The Defendants are asking this court to make findings of fact and law and to find, beyond a reasonable doubt, that the Plaintiffs have not pleaded facts sufficient to make out a cause of action. In a 12(b)(6) Motion, the Court's review is limited. "It is well settled in Rhode Island that the role of a Rule 12(b)(6) Motion is to test the sufficiency of the complaint." Gammell-Roach v. Howland, *PB* 09-3501 (RISUP). (See attached). See Toste Farm Corp.v. Hadbury, Inc., 798 A.2d 901, 905 (R.I. 2002) (*quoting* R.I. Employment Sec. Alliance, Local 401, S.E.I.U., AFL-CIO, v. State Dep't of Employment and Training, 788 A.2d 465, 467 (R.I. 2002); See also Pellegrino v. R.I. Ethics Comm'n., 788 A.2d 1119, 1123 (R.I. 2002) (stating that "[t]he standard of granting a motion to dismiss is a difficult one for the movant to meet"). The complaint must give fair and adequate notice of the plaintiff's claim, but in most cases, it need not contain a high degree of factual specificity. See Hyatt v. Village House Convalescent Home, Inc., 880 A.2d 821, 824 (R.I. 2005). In Gammell Judge Silverstein wrote that "The Court should grant such a motion only when it is clear beyond a reasonable doubt that the [non-movant] would not be entitled to relief under any set of facts that could be proven in support of the claim." See *PB* 09-3501. Clearly, the facts set forth in the

complaint and then further explained in Plaintiffs' initial memorandum do support a claim for relief and this Court should not find, beyond a reasonable doubt, that those facts, as alleged, do not set forth a claim for the relief requested. The Plaintiffs, mindful that this matter is being ruled upon by the Federal Court, have referenced the Rhode Island Rule and cases pertaining thereto because this matter was originally filed in the Superior Court of the State of Rhode Island and later removed to the Federal Court by the Defendants based upon Diversity Jurisdiction.

The Plaintiffs have alleged clearly and concisely that they dispute the legal authority of MERS to have assigned the original mortgage to BAC and further contested the standing of BAC to notice and/or conduct a foreclosure on their property because it did not have the Promissory Note when it noticed the foreclosure on the Plaintiffs' property. This Motion to Dismiss by the Defendants states that the Plaintiffs have not posited a colorable claim. This is simply not true.

The Plaintiffs' allege that BAC, and/or any of its' agents, are without authority under the provisions of Rhode Island General Laws §34-11-1 to make any recording on their land record title in Coventry, Rhode Island and that the private MERS system exists in derogation of the Rhode Island Recording Statute. Defendants improperly filed said recordings against Plaintiffs' title by and through the unauthorized actions of Defendants' agents. The Plaintiffs further allege that BAC does not have standing to foreclose because it does not have legal or beneficial interest in the mortgage and note. They allege that purported assignment to BAC from MERS, signed by Randall McHugh, Esquire, an attorney at Bendett & McHugh, a law firm located at 160 Farmington Avenue, Farmington, CT, is not an actual assignment by MERS. Randall McHugh is not an actual Vice President, employee or agent of MERS. His services are limited to signing documents to reverse engineer titles to allow servicers and lenders to foreclose when they have no actual standing to do so.

The Defendants would have this Court conclude that the Plaintiffs are not entitled to relief based upon the complaint. In support thereof, the Defendants claim that a default on a note somehow renders a title clearing action a nullity. This is simply not true. The Plaintiffs are not claiming that the note should be forgiven and they are not admitting that it has not been satisfied. The Plaintiffs have claimed that the assignment from MERS to BAC is void and that the foreclosure sale that was noticed was done so in violation of Rhode Island General Laws §34-11-22 and that the assignment violates Rhode Island General Laws §34-11-1, and is therefore void under Rhode Island General Law §34-11-1 et seq. The fact that the Plaintiffs accepted loan proceeds from a lender willing to give them a loan that they never should have been given is irrelevant as to whether or not the Plaintiffs have made out a cause of action as the Defendants would have this Court believe.

The Plaintiffs contend that MERS was without authority under the provisions of Rhode Island General Laws §34-11-1, et seq to make any recording on their land record. Furthermore, MERS did not properly file said recordings against their property due to the unauthorized actions of its alleged agents. These contentions and allegations have been pled with great specificity and most certainly are sufficient to warrant a denial of the Defendants' Motion to Dismiss.

The Defendants' rely upon unconfirmed and challenged developments in Rhode Island case law which provides weak support for their argument. The facts of <u>Anthony Bucci and Stephanie Bucci v. Lehman Brothers Bank, FSB, a Federal Savings Bank, MERS & Aurora Loan Services, LLC.,</u> (Providence Superior Court, C.A. PC-2009-3888), 2009 R.I. Super. Lexis 110 (August 25, 2009)*,* are not at issue in this case and this Court should not use it to determine whether the facts "in this case" make out a cause of action. As Judge Silverstein wrote in <u>Bucci</u>, his holding was "***limited to the case at bar***." <u>Id</u>. [emphasis added] The facts of <u>Bucci</u> should not

even be an issue in this case but the Defendants have based much of their argument on those facts. Id. Bucci does not control what this Court or any other Court in the country must do in a MERS case. In fact, this case is nothing like Bucci, despite the best efforts of MERS to paint it as such. In Bucci, MERS was named in the mortgage as the mortgagee and nominee of the Lender. Id. In the case at bar, MERS is not foreclosing but has allegedly assigned the mortgage when it did not own the note. At best in this case, MERS held bare legal title to the mortgage, in a nominee capacity. All evidence points to the fact that BAC does not hold the note related to this mortgage transaction and it is settled by way of trial testimony in Bucci that MERS never holds the note. Id. Given this fact, MERS could not assign the mortgage without the note, and additionally, without the note, MERS had nothing to transfer.

Further, the Bucci matter is currently on appeal to the RI Supreme Court. Counsel for the defendants would have this Court believe that with one fell swoop, MERS was embraced by the RI Superior Court. It was not. Judge Silverstein's ruling speaks for itself, but importantly, he wrote in his conclusion that "MERS, *in the case at bar,* [emphasis added], has standing to foreclose." Id. Judge Silverstein made it clear that each case involving MERS turned on its own facts. In fact, the Presiding Justice of the Providence Superior Court adopted and published Administrative Order # 2010-14 entitled "IN RE: MORTGAGE ELECTRONIC REGISTRATIONS SYSTEMS ("MERS") in recognition of the fact that the holding in Bucci did not address all issues pertaining to MERS and that due to the sheer number of MERS cases pending in the Superior Court, it was necessary to establish a "MERS" Calendar with all cases being assigned to a single justice. While it has been pending in the Supreme Court, case law has continued to evolve throughout the United States which may very well have lead Judge Silverstein to reach a different conclusion. In any event, the Bucci's are not before the court in

this case.   This case is about the Acetos and ***should be determined based on the facts at bar in this case***.   This would be in line with the holding in <u>Bucci</u>. <u>Id</u>.

The Plaintiffs have submitted more than sufficient facts to prove that they are entitled to relief.  The facts set forth hereinabove are clear and concise.  The Plaintiffs claim that at the closing of the loan which is at the heart of this matter, the promissory note executed in favor of ABC and the Mortgage executed in favor of MERS in some mysterious fashion, were disconnected.[2]   MERS never contends that it is the holder of the promissory note in this case so it can never be called a holder.  If it is not a holder, it does not have the rights of a mortgagee that does hold the note.[3]  To be clear, in <u>Bucci</u>, MERS admitted it was not a holder in this case and/or any other case in Rhode Island, therefore admitting they do not satisfy the standing requirement to either assign or foreclose. <u>Id</u>.

The issue of whether or not MERS has standing to assign has not been addressed in any Court in the State of Rhode Island.  It can be deduced, however, from a careful reading of <u>Bucci</u>, that in order for MERS to transfer property in the State of Rhode Island, it must be connected to the beneficial owner of the Note. <u>Id</u>. In this case, it is clear that there is no such connection.   The Defendants go on to reference cases from other jurisdictions that have ruled that MERS has standing to foreclose/assign but does not elaborate on the facts of those cases.  If it did elaborate, this Court would learn that the facts of those cases were not in line with the facts in <u>Bucci</u> and not in harmony with the facts in this case.  In fact a majority of courts in the Country have ruled that MERS does not have standing to bring a foreclosure action in its own name.  This is true in those cases and in this case because MERS does not own the note.  The crash of the secondary mortgage market and MERS's role in causing that catastrophe have brought to light the true role

---

[2] As in this case, "If the obligation is a negotiable note, UCC §3-2-3 is generally understood to make the right of enforcement of the promissory note transferrable only by delivery of the instrument itself to the transferee."
[3] See Restatement (Third) of Property, Mortgages §5.4((c)

of MERS and it is no longer defined as a innovative tool of real estate commerce but as a destructive influence on the entire mortgage industry from the perspective of the consumer.

In reality, the current trend in the country is that MERS does not have standing to foreclose or to assign mortgages. See In Re Wilhem, Case No. 08-20577-TLM (Bankr. Idaho, 2009), In re Foreclosure Cases, 521 F. Supp. 2D 650 (S.D. Oh. 2007), In Re Hayes, 393 Bankr. 259 (Bankr. D. Mass. 2008) In Re Mitchell, Case No. BK-S-07-16226-LBR (Bankr. Nev. 3/31/09), In re Vargas, 396 B.R. 511 (Bankr. C.D. Cal., 2008). In all of these cases, MERS' mortgages and assignments have been found to be, one way or another, unenforceable. Further, of particular interest are the following cases all decided by Judge Arnold Schack. In all of these cases, he was particularly attentive to the actions of MERS and the Lenders. Based upon that close attention, he rendered each of the following compelling decisions: JP Morgan Chase Bank, N.A. v. George, 2010 NY Slip Op 50786, Kings 2010; US Bank v. Maynard, 2007 NY Slip Op. 33766, Kings 2007; HSBC Bank USA, NA v. Betts, 2008 NY Slip Op 31170, Kings 2008; Countrywide Home Loans, Inc. v. Persaud, 2008 NY Slip Op 30076, Kings 2008; Deutsche Bank National Trust Co. v. Maraj, 2008 NY Slip Op 50176, Kings 2008; US Bank v. Guichardo, 2009 NY Slip Op 50151, Kings 2009; IndyMac Bank, FSB v. Boyd, 2009 NY Slip Op 50094, Kings 2009; Deutsche Bank National Trust Company v. Auguste, 2008 NY Slip Op 31991, Kings 2008; Wells Fargo Bank National Association v. John Reyes, 2008 NY Slip Op 51211, Kings 2008; Bank of NY v. Myers, 2009 NY Slip Op 50159, Kings 2009; Deutsche Bank National Trust Co. v. Bailey, 2009 NY Slip Op 50191, Kings 2009; Wells Fargo Bank, N.A. v. Hunte, 2010 NY Slip Op 50637, Kings 2010; LaSalle Bank NA v. Smith, 2010 NY Slip Op 50470, Kings 2010; HSBC Bank USA, NA v. Vasquez, 2009 NY Slip Op 51814, Kings 2009. This is but a sampling of

scores of cases where MERS' standing is being denied.  See Norton Bankruptcy Law Advisor, John R. Hooge, Issue No.8 (August 2010).

In addition, the Plaintiffs draw the Court's attention to the case Mortgage Electronic Registration Systems, Inc., as Nominee for WMC Mortgage vs. Frank S. Johnston and Ellen L. Johnston, et al., State of Vermont, Rutland Superior Court, Docket No. 420-6-09 Rdcv. (September 1, 2009).   In this very recent case, the Vermont Superior Court wrote a nineteen (19) page decision regarding many of the issues related to this matter.  The decision of the Johnston[4] Court was detailed, persuasive and in direct contravention of Huggins, 357 B.R. 180 (Bankr. D. Mass. 2006).  Further, in August of this year, the Maine Supreme Court ruled that "MERS is not in fact a 'mortgagee' within the meaning of our foreclosure statute, 14 M.R.S. §§ 6321-6325, and therefore had no standing to institute foreclosure proceedings..." Mortgage Electronic Registration Systems, Inc. v. Saunders, 2010 ME 79 - Me: Supreme Judicial Court 2010.[5] While the Defendants claim that the trend in courts is to find MERS has standing, that is certainly not the case in our own backyard. The Plaintiff asks this Court to give great weight to these thoughtful decision rendered by sister New England States in denying the relief sought by the Defendants. This is a well plead case that should proceed through discovery and to trial.

The conclusory statement made by the Defendants in its memorandum which states "Under Rhode Island Law and the terms of the Mortgage, MERS had the ability to hold and assign the Mortgage" is untrue. The Defendants cite Bucci as precedent and support for this statement. C.A. PC-2009-3888.  It must be noted that Bucci is on appeal to the RI Supreme Court. It should also be noted that the Rhode Island Superior Court Chief Justice has established a MERS Calendar that is held once a month by Mr. Justice Rubine to hear MERS cases.  It is clear

---

[4] See Johnston Attached.
[5] See Saunders Attached

that the Rhode Island Judiciary as a whole, has not adopted the decision of Judge Silverstein as the definitive law in the State of Rhode Island.

Further, Judge Silverstein made it clear in his written opinion that his decision was limited "to the case at bar." Id. By no means did he put his seal of approval on MERS ability to foreclose in all cases and he did not address at all the issue in this case including whether or not MERS can assign a Mortgage. Counsel for the Defendants points out that Judge Silverstein relied on the holding in In re Huggins, 357 B.R. 180 (Bankr. D. Mass. 2006). In reality, the Huggins' Court clearly limited its ruling to foreclosures. Id. The Huggins' Court did address the issue of MERS being able to assign and court comments do not support MERS' position in this case. The Huggins Court discussed at length the case of LaSalle Bank National Association v. Lamy, Slip Copy, 12 Misc. 3d 1191(A) 2006 WL 2251721 (N.Y. 2006). In the Lamy case, the court denied a foreclosure action by an "assignee of MERS" on the grounds that MERS had no ownership interest in the underlying note and mortgage but rather acted as a nominee and thus did not have the power or right to "assign." Id. Thus the Lamy holding has more applicability to this case than does Huggins. In fact, the Huggins Court wrote that "there was no disconnection between mortgage and note." See C.A. PC-2009-3888. Again, by simple deductive reasoning, it can be concluded that if there had been a disconnection in Huggins, the decision would have been different. It would follow therefore, that if there is a disconnection between the note and mortgage, a conveyance cannot take place. Given that there is proof of disconnection between the note and mortgage, the Plaintiffs' claim in this matter makes out a cause of action under the laws of the State of Rhode Island.

Under Rhode Island Law and pursuant to the United States Supreme Court case of Carpenter v. Longan, 83 U.S. 271 (1872), where the United States Court reasoned that "the note

and mortgage are inseparable; the former as essential, the latter as an incident. As assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity." Id at 274. In this case, where there is a mere assignment of the mortgage without the assignment of the note, the assignment is a nullity. The mortgage does not go from MERS to BAC because of the lack of the note. Furthermore, a very recent landmark case out of the Commonwealth of Massachusetts, our neighboring and similar non-judicial foreclosure state, has confirmed that "where a note has been assigned but there is no written assignment of the mortgage underlying the note, the assignment of the note does not care with it the assignment of the mortgage." U.S. Bank National Assoc. v. Ibanez, SJC 10694 (January 7, 2011). The Ibanez Court, which is being considered by courts around the country as a guide for ruling on cases involving mortgage assignments, explained that "the party foreclosing must prove that the assignment was made by a party itself that held the mortgage and the obligation the mortgage secures" (i.e. the note). See Ibanez, citing In re Parrish, 326 B.R. 708, 720 (Bank. N. D. Ohio 2005). ("If the claimant acquired the note and mortgage from the original lender or from another party who acquired it from the original lender, the claimant can meet its burden of proof through evidence that traces the loan from the original lender to the claimant.") It is clear therefore, that with every transfer of the note, there needs to be an assignment of the mortgage that corresponds to the transfer of the note in order for the party claiming to have standing to properly foreclose.

The Defendants reach beyond Bucci and alleged that the Acetos somehow agreed that MERS would serve as nominee of some future unknown nominees, as long as they were members of MERS. See C.A. PC-2009-3888. They didn't have to be members of MERS when the agreement was allegedly made, but as long as they became nominees at some time in the future, they agreed to the aforesaid arrangement. The complaint is clear that the Acetos did not agree to

allow MERS to assign the mortgage or to foreclose on them. Whether or not MERS could assign or foreclose is a question of law. In fact, that very question is on appeal to the Rhode Island Supreme Court. These Defendants, and all MERS cases that have been removed to the Federal Court, seek to avoid a ruling by the RI Supreme Court in the <u>Bucci</u> matter. <u>See Id</u>. The Defendants argue that Rhode Island Courts and other Courts have regularly rejected arguments, such as those advanced by these Plaintiffs, which seek to challenge MERS' standing. Given the fact that the Plaintiffs' attorney represented the Bucci's in the Superior Court trial in addition to over one-hundred persons in cases similar to <u>Bucci</u>, it can be stated first hand that RI has ruled only once regarding this issue and that was long before the discovery of RoboSigning and reverse title engineering. The handful of cases cited by the Defendants in it memorandum are easily distinguished from the case at bar.

In regard to <u>Trent v. Mortgage Elec. Registration Sys. Inc.</u>, 288 Fed. App'x 571, 572 (11th Cir. 2008), this Court should consider that it was an action brought under the Florida Deceptive and Unfair Trade Practice Act. The case was centered around collection tactics employed by servicers, but it did support the position of these Plaintiffs that MERS holds only legal title and not the note. It did not support the allegation that MERS is the nominee of every subsequent holder of the promissory note. In regard to <u>In re Mortgage Elec. Reg. Sys</u>. MDL Docket No. 09-2119-JAT, the line of cases cited within do not support the allegation of the Defendants. In those cases, based upon Nevada Law, which is not in line with the Rhode Island Statutory scheme of foreclosure, the Plaintiffs did not prevail because they failed to allege facts that MERS was not the nomine of the current owner of the note. That was a necessary part of the complaint in order to survive a Motion to Dismiss. In the case at bar, these Plaintiffs have plead that the note and mortgage were bifurcated or split at the closing and that they remain split even to this day. In

fact, the Defendants have admitted that BAC does not own the note. This admitted fact, which violates the holding of the SJC in Ibanez is sufficient to defeat the Defendants' Motion to Dismiss. See SJC 10694 (January 7, 2011). Also, the Plaintiff's in these cases failed to plead lack of default which was required under Nevada law. The remainder of these cases discuss the particulars of Nevada law and the failure of the Plaintiffs to follow the law in their pleadings. Finally, these cases are not in line with the holding in Bucci wherein Judge Silverstein clearly stated that the note and mortgage were connected based upon trial testimony. See C.A. PC-2009-3888. In reality, Bucci stands for the proposition that the party foreclosing must have both the note and mortgage, which is completely contrary to Nevada law. Id. Therefore these cases should not be given any weight by this Court. If the Defendants want to rely on Bucci, they should understand exactly what it says; *the note and mortgage have to be as one in order to foreclose in the State of Rhode Island*. Id.

The Simon v. Bank of America, N.A. 2010 WL 2609436, 30 at *11 (D. Nev June 23, 2010) case dealt with generalized claims of fraud against Bank of America and the court concluded that the facts were not plead in a sufficient manner to support the claim for the Tort of Wrongful Foreclosure under Nevada law. In fact, the Simon Court pointed out in several areas of its opinion that the Plaintiff's pleadings were defective to satisfy the requirements of Nevada Law. Id. Rhode Island does not recognize the tort of Wrongful Foreclosure which renders the Simon case analysis of little use to this Court.

In regard to Ciardi v. The Lending Co., Inc., 2010 WL WL2079735 at *3 (D. Ariz. May 24, 2010), the Court pointed out that the Plaintiffs failed to "…allege any facts supporting their assertion that the promissory note and the deed of trust have been bifurcated." It was for that reason that the Plaintiff's argument failed, however that is not true in the case at bar. These

Plaintiffs have stated facts in support of their bifurcation contention taking it outside the realm of the <u>Ciardi</u> case. <u>See</u> <u>Id</u>. In regard to <u>Cervantes v. Countrywide Home Loans, Inc.</u>, 2009 WL 3157160 (D. Ariz. Sept. 24, 2009), that case involved a complaint related to TILA, RESPA violations, Fair Housing, Fraud and the Arizona Consumer Fraud Act; nothing in the <u>Cervantes</u> case is similar to the case at bar. Further, unlike the Aceto complaint, the Cervantes court pointed out that no facts supporting the bifurcation argument were included in the complaint. <u>Id</u>.

The Aceto's ask this Court to review the case of <u>Barry Alton Parker v. U.S. Bank National Association, as Trustee on behalf of the Holder of the Adjustable Rate Mortgage Trust 2007-1, et al. Defendants</u>. Case No. 09-10186, Adversary Proceeding No. 09-1022. (Bankr. D. Vt. September 29, 2010.) In this case, the United States Bankruptcy Court, in a Summary Judgment ruling, denied the Bank's Motion For Summary Judgment and found that there was a question of fact as to whether or not the Bank lacked standing to enforce a mortgage note where there was an insufficient record concerning the transfer requirements of the controlling PSA. In essence, the Court found that a claim by a Plaintiff that there are defects in the chain of title, is material to the appropriate disposition of a foreclosure case, similar to the more profound ruling of the SJC in <u>Ibanez</u>. <u>See</u> SJC 10694 (January 7, 2011).

In the matter of <u>Roman Pino v. The Bank of New York Mellon</u>, District Court of Appeal of the State of Florida, No. 4D10-378 at *5 (4th Dist. January 2011), the Appellate Court concluded "that this [whether documents filed by the Bank were fraudulent] is a question of great public importance, as many, many mortgage foreclosures appear to be tainted with suspect documents." One of the arguments central to the Plaintiffs' complaint is that certain documents were executed without authority and although they have not alleged fraud, the facts they allege are analogous to the <u>Pino</u> case. <u>See</u> Id. The question before this Court may very well be whether

that the assignment at issue is a fraud.   This is a matter of grave national concern and should be tried to the end and not dismissed before it can be fully explored.

In their argument, the Defendants suggest that Counts I and II of the Complaint fail to state a cognizable claim for relief.  The Defendants claim that a "request for declaratory relief is a remedy, however, and not an independent cause of action."[6]  In support of this position, they cite the case of Harritos v. Cambio, 1996 WL 936906 at *7 (RI. Super. Ct. Mar 13, 1996).   The Harritos case was related to an appeal from a Summary Judgment entered on behalf of the Defendants.   The facts of the case are rather sordid and relate to personal relationships gone bad and the case does not involve any facts remotely similar to the case at bar.  The Harritos' filed a 22 count complaint that sounded in fraud, RICO, negligence, misrepresentation, breach of fiduciary duty, breach of contract, breach of warranty and conversion. The trial justice concluded that none of the claims were supported by the evidence.  In support thereof, they cite several cases, none of which actually buttress their claim. The Defendants have cited the Superior Court Slip Decision in their memorandum, while interesting, the Superior Court's ruling was based upon the facts of the case, not upon the issue of whether or not a declaratory judgment action is a remedy or a separate cause of action.   The Superior Court decision does not even mention declaratory judgment standards.

The second case cited by the Defendants in support of this particular argument is Buck v. Am. Airlines, Inc., 476 F.3d 29 (1st Cir. 2007) which involves a bizarre set of circumstances related to the sale of airline tickets and has no application to this case. In fact, the Federal District Court for the District of Massachusetts concluded that the entire claim was preempted by Federal Law and for that reason, never even got to the alleged substance of Buck's claims.   In fact, in a humorous note, Mr. Justice Selya, Senior Circuit Judge wrote that "The District Court found the

---

[6] Defendant's Motion to Dismiss, Argument, Section I, Part A

Plaintiffs' claims preempted and dismissed the suit for failure to state a viable cause of action. We too conclude that the plaintiffs are fruitlessly endeavoring to fly in unfriendly skies." Id. at 31. Finally, the quote provided by the Defendant was gleaned from a footnote to the actual decision in the Buck case. At footnote three, the Court wrote as follows:

> "Although the plaintiffs state 'declaratory judgment' as a cause of action, the provision that they cite, 28 U.S.C. §2201 (a) creates a remedy, not a cause of action."

The case at bar was brought under provisions of §9-30-1, et. seq. of the Rhode Island General Laws which does provide for a cause of action. This case is nothing like Buck and not governed by 28 U.S.C. §2201 (a). Id. Buck offers no support for the argument posited by the Defendants and warrants no further comment. Finally, the Defendants removed this case to the Federal Court, so asking the Court to dismiss a State Court action based upon a Federal Statute is gratuitous at best. Given the mortgage situation in the United States, this case, which is well plead, deserves to be tried. In any event, the instant complaint contains actions to quiet title and negligence and neither of those causes of action are barred by Federal law.

The Defendants go on to suggest to this Court that the Plaintiffs cannot challenge the foreclosure because they have not complied with the Tender Rule. Simply put, there is no Tender Rule in place in the State of Rhode Island. It is not codified and the case set forth below can be easily distinguished from the case at bar. In reliance on the matter of Hanley v. Brayton, 17 A.2d 857, 860 (R.I. 1941), the Defendants apparently claim that even if there is a title defect and there is a genuine issue as to who owns the operate note and mortgage related to real estate, the property owner must tender payment. To be clear, the word "tender" only appears once in the Hanley case and not in conjunction with word rule. Id. At issue in this case is who owns the note and mortgage and who is, if anyone, due payment. It is impossible for the "tender rule" to be enforced because there is no one to tender payment. Further, there is nothing in Rhode Island law

that even suggests that a challenge to title in the Superior Court carries with it a price of admission. It does not. At the core of this matter is whether or not the transfers of the Plaintiffs' mortgage and note were lawful. This is a question of law and does not sound in equity. Since there is no foreclosure pending, the issue pertaining to the alleged tender rule is moot at this stage of the proceedings.

The Defendants have also cited the Federal Case of <u>White v. BAC Home Loans Servicing</u>, LP, 2010 WL 4352711 at *5 (N.D. Tex. Nov. 2, 2010) which concerns a Wrongful Foreclosure action brought pursuant to the Texas Wrongful Foreclosure Act. There is no wrongful foreclosure act in the State of Rhode Island so on that basis alone, this case is self-distinguishing. Notwithstanding this fact, the correct assessment of the alleged tender rule would be for this Court to find that the precept that equitable relief requires equitable conduct is a limit on remedy, no right. <u>See</u> <u>Id</u>. Thus the failure of a party to tender in a mortgage does not precluded them from filing suit when a foreclosure proceeding is wrongful. Rather, it operates on the back as a force which shapes the remedy and relief.

The Defendants further "grab bag" a number of claims to imply Counts I and II should be dismissed. A "grab bag" is collection of miscellaneous things. The statements set forth in the complaint about MERS are a collection of allegations, all of which are alleged to be true, and are not thrown together in a miscellaneous fashion, but in an order specific enough to explain to the Court the MERS machine.

The arguments made by the Defendants relative to MERS' status as nominee have already been addressed hereinabove, but it is worth further comment at this stage of this document. Relative to <u>Bucci</u>, currently it remains on appeal to the Rhode Island Supreme Court, it is important to note that the holding in <u>Bucci</u> was limited to the "case at bar." <u>See</u> C.A. PC-2009-

3888. It is also important to note that <u>Bucci</u> dealt with a MERS foreclosure and not a MERS assignment such as is issue in this case. <u>Id</u>. Judge Silverstein did not rule that MERS could assign mortgages that it held in a nominee capacity. Judge Silverstein went to great lengths to point out that in <u>Bucci</u>, he found facts sufficient to conclude that the note and mortgage were not bifurcated. <u>See</u> Id. He found it so important to make that point that it is likely that if he had found a disconnection between the note and mortgage, his decision would have been converse to that being used as a crop thrasher by the Defendants. Simply put, <u>Bucci</u> supports the Plaintiffs' claim in this case; to wit, when the note and mortgage are separated, no assignment may take place and, it follows, that no foreclosure can take place. <u>See</u> <u>Id</u>. The Defendants include the case of <u>In re Tucker</u>, No. 10-61004, slip op. (Bankr. W.D. Mo. Sept. 19, 2010) in its memorandum. As set forth in <u>Tucker</u>, "under Missouri law, the holder of a note that is in default is generally entitled to foreclose under the deed of trust, regardless of whether the deed of trust has actually been assigned to such holder." <u>Id</u>. at 3. This is not the state of the law in Rhode Island and is totally inapposite to the holding in the <u>Ibanez</u> case. <u>See</u> SJC 10694 (January 7, 2011). Also, in the <u>Tucker</u> case, MERS held the beneficial interest in the mortgage. Based upon its testimony in <u>Bucci</u>, MERS holds only legal title in Rhode Island, thus <u>Tucker</u> does not apply to the case at bar. See C.A. PC-2009-3888; No. 10-61004, slip op. The same holds true for the case of <u>Book v. Mortgage Electronic Registration Sys.</u>, No. 3:08-cv-821, slip. op (D. Conn. Mar. 26, 2009), and its application to the case at bar. In <u>Book</u>, MERS' motion to dismiss was granted based upon lack of subject matter jurisdiction and the issue of MERS' ability to assign mortgages was never addressed. <u>Id</u>. In regard to <u>Linkhart v. US Bank, NA</u>, 2010 WL 1996895, at *2 (S.D. Cal. May 17, 2010), the Court stated that the Complaint offered almost no factual allegations; that cannot be said of this complaint. If anything, there is an overabundance of stated facts that bear on the

issues before this Court. Further, <u>Linkhart</u> and the California Statute at issue are nothing like Title 34 of the General Laws of the State of Rhode Island. <u>See</u> <u>Id</u>. In Rhode Island, the party foreclosing must hold the mortgage and the note. This is directly in line with the holding in Ibanez. <u>See</u> SJC 10694 (January 7, 2011).

In the case of <u>Nicholson v. OneWest Bank</u>, 2010 WL 2732325, slip op. (N.D. Ga. Apr. 20, 2010), the Court stated clearly that OneWest held the note and security deed and given those facts, OneWest was able to foreclose. <u>Nicholson</u> actually supports the Plaintiffs' claim and is in line with the holding in <u>Bucci</u> that the note and mortgage must be a unit in order for a foreclosure to take place. <u>See</u> Id.; CA PC-2009-3888. No further comment is needed regarding this case since it favors the Plaintiffs.

The case of <u>Croce v. Trinity Mortgage Ins. Corp.</u>, 2009 WL 3172119, at *3 (D. Nev. Sept. 28, 2009) stated that "courts around the country have held that MERS has standing as a nominee beneficiary in connection with non-judicial foreclosure proceedings." In Rhode Island, MERS has testified that it holds only legal title and it does not own the beneficial interest in the mortgage. In fact, in <u>Bucci</u>, it was testified to that MERS represented the beneficial owner of the mortgage. <u>Croce</u> and <u>Bucci</u> represent two quite opposite legal conclusions, and neither of these conclusions offer any guidance on the issues raised in this case. <u>See</u> 2009 WL 3172119; C.A. PC-2009-3888.

In regard to <u>MERS v. Azize</u>, 965 So. 2d 151 (Fla. Dist. Ct App. 2nd Dist. 2007), the Court ruled MERS could foreclose because it was holder of the mortgage and the note. In Rhode Island, MERS testified that it only holds legal title to the mortgage and never holds the note. This renders <u>Azize</u>, which has been seriously abrogated by scores of decisions to the converse, of little consequence in the ultimate determination of this case. <u>Id</u>. The same holds true for <u>US Bank, NA.</u> <u>v. Flynn</u>, 27 Misc. 3d 802, 806 (N.Y. Sup. Ct. 2010). where MERS again holds note and

mortgage. It does not address the issue at bar and is at odds with the state of the law in Rhode Island. In <u>MERS v. Mosley</u>, 2010 Ohio, 2886 (Ohio App. 8th Dist., July 26, 2010), the situation again involved a MERS foreclosure when it was determined that MERS held both the note and mortgage. The facts of this case cannot be squeezed to fit into an analysis of any of the aforesaid cases. In Rhode Island, MERS does not own the note and cannot, therefore, validly assign a mortgage; that is black letter law.

In regard to <u>Jackson v. MERS</u>, 770 N.W. 2d 487, 503 (Minn. 2009), the Court did not uphold the MERS system, it simply upheld a statute adopted by the State of Minnesota, Minn. Stat. §§580.02 and 580.04. However the dissent in this case, penned by Justice Page, offers a crystal clear picture as to why MERS and the MERS system should not find favor with the Courts:

> "Finally, it is apparent with the benefit of hindsight that the ability of lenders to freely and anonymously transfer notes among themselves facilitated, if not created, the financial and banking crisis which our country finds itself. It is not only borrowers but also other lenders who rightfully are interested in who has held a particular promissory note that has become worthless may have an interest in knowing the hands through which that note passed. Under the MERS system, however, the identity of those previous holders is as shielded from the lender's view as the borrower's. As a result, of the court's holding, namely, that mortgage transfers between MERS members need not be recorded before a mortgage can be foreclosed by advertisement, neither borrowers nor lenders will ever be able to hold anyone in the chain of transfers accountable. That is not sound public policy." <u>Id</u>.

This dissent, written in August of 2009 foreshadowed the holding in <u>Ibanez</u>. <u>See</u> SJC 10694 (January 7, 2011). The secret society of MERS can no longer be allowed to operate with impunity and in disregard for the law set forth in the Constitution of these United States of America. Query? What would Thomas Jefferson have to say about MERS? I ask the Court to respectfully consider the following:

> I believe that banking institutions are more dangerous to our liberties than standing armies. If the American people ever allow private banks to control the issue of their currency, first by inflation, then by deflation, the banks property until their children wake-up homeless on the continent their fathers conquered. The issuing power should be taken from the banks and restored to the people, to whom it properly belongs. [7]

The Defendants go on to argue that the bankruptcy of ABC, the original lender which was never the mortgagee and which never negotiated or delivered the note to BAC, has no impact on the ability of MERS to assign and BAC to foreclose. They are wrong.

The recitation of the terms of the mortgage is their undoing. It is clear that ABC was not the mortgagee as it had nothing to assign. It is clear that MERS never had the note. MERS has admitted that in the trial of the <u>Bucci</u> matter. <u>See</u> C.A. PC-2009-3888. It is beyond question, therefore, that the note and mortgage were bifurcated. The legal title to the mortgage was in MERS and the beneficial interest in the mortgage was in ABC. As discussed earlier herein, under Rhode Island Law and pursuant to the United States Supreme Court case of <u>Longan</u>, where the United States Supreme Court reasoned that "the note and mortgage are inseparable; the former as essential, the latter as an incident. 83 U.S. at 274. As assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity." What could be more clear in this case? MERS had nothing to assign. The attempted assignment of a mortgage, without the note, is a nullity. The Defendants then claim that the Plaintiffs' allegation that the validity of the assignment cannot be challenged based upon a California case from 2009. In <u>Phillips v. Wells Fargo Bank, N.A</u>. 2009 W.L 3756698 at *4 (S.D. Cal. Nov. 6, 2009), the Court held that an allegation of an unauthorized signature was unsupported by factual allegations. In this case, the complaint is clear and concise as to why Randall S. McHugh, Esquire, the attorney for the law

---

[7] Quote from Thomas Jefferson, 3rd President, cited from http://www.foundersquotes.com/Thomas_Jefferson/i-believe-that-banking-institutions-are-more-dangerous-to-our-liberties-than-standing-armies/

firm that attempted to foreclose on the Plaintiffs, was not an authorized party to sign the assignment. He is not employed by MERS, rather, he paid money to become an officer of MERS. There is no power of attorney or corporate authority on record giving him authority to sign for MERS. Randall McHugh signed a document that he had no authority to sign because of the facts set forth in the complaint with specificity. Further, in light of the mortgage fraud that is destroying the United States real estate market and the very core of real estate law in America, his signature on this document five (5) years after the mortgage was recorded, for the sole purpose of foreclosing on a MERS mortgage violates the public trust and sound public policy. His actions should be sanctioned, not embraced by any court in this country.

The Defendants then venture into the true heart of the MERS Frankenstein Monster.[8] The Defendants state that <u>Bucci</u> recognized that the original lender is not the only entity that may foreclose. <u>See</u> C.A. PC-2009-3888. This is not what the mortgage says. The complaint clearly sets forth exactly what the mortgage says. Rhode Island General Laws §34-11-21 reads as follows:

> **§ 34-11-21  Statutory mortgage condition. –** The following condition shall be known
>
>   (Condition)
>
> Provided, nevertheless, and this conveyance is made upon the express condition, that if the mortgagor or his or her heirs, executors, administrators or assigns shall pay to the mortgagee or his or her heirs, executors, administrators, or assigns the principal and interest of that certain promissory note bearing even date with this deed and secured by this deed, and shall perform every other obligation secured by this deed, at the time provided in the promissory note or in this deed, and shall also pay all taxes and   assessments of every kind levied or assessed upon or in respect of the mortgaged premises, then this deed, as also the promissory note, shall become and be absolutely void  to  all  intents  and  purposes whatsoever.

---

[8] Please cite university of Cincinnati Law review article.

**History of Section.**(P.L. 1927, chi 1056, § 13; G.L. 1938, chi 436, § 12; G.L. 1956, § 34-11-21.)

It is clear that 34-11-21, unchanged by the legislature for over 50 years, contemplated the mortgagee and the lender being the same party. In essence, if the mortgagor/borrower paid the mortgagee/lender, then the note would be discharged. There is no question that legislature did not contemplate a time when the note and mortgage would be severed.   The same can be said of 34-11-22 which reads as follows:

> **§ 34-11-22  Statutory power of sale in mortgage. –** The following power shall be known as the "statutory power of sale" and may be incorporated in any mortgage by     reference:
>
> (Power)
>
> But if default shall be made in the performance or observance of any of the foregoing or other conditions, or if breach shall be made of the covenant for insurance contained in  this deed, then it shall be lawful for the mortgagee or his, her or its executors, administrators, successors or assigns to sell, together or in parcels, all and singular the     premises hereby granted or intended to be granted, or any part or parts thereof, and the benefit and equity of redemption of the mortgagor and his, her or its heirs, executors, administrators, successors and assigns therein, at public auction upon the premises, or at such other place, if any, as may be designated for that purpose in this deed, or in the     published   notice   of sale first by mailing written notice of the time and place of sale by certified mail, return receipt requested, to the mortgagor, at his or her or its last known address, at least twenty (20) days for mortgagors other than individual consumer  mortgagors,  and  at  least  thirty  (30)  days  for individual consumer mortgagors, prior to first publishing the notice, including the day of the mailing in the computation; second, by publishing the same at least once each week for three (3) successive weeks in a public newspaper published daily in the city in which the mortgaged premises are situated; and  if there be no public newspaper published daily in the city in which the mortgaged mortgaged premises are situated in the city of Central Falls, in a public newspaper published  daily  in  the  city  of Pawtucket; (2) if the mortgaged premises are situated in the town of North Providence, in a public newspaper published daily in either the city of Providence or the city of Pawtucket; (3) if the mortgaged premises are situated in any of the towns of Cumberland, Lincoln, Smithfield or North Smithfield, in a public newspaper published daily in either the city of Pawtucket or Woonsocket; (4) if the mortgaged premises are situated in

the county of Providence elsewhere than in the above-named cities and towns, in a public newspaper published daily in the city of Providence; (5) if the mortgaged premises are situated in the county of Newport, in a public newspaper published daily in the city of Newport; but if there be no such public newspaper so published, then in some public newspaper published anywhere in the county of Newport; (6) if the mortgaged premises are situated in any of the counties of Bristol, Kent or Washington, in a public newspaper published daily in the city or town in which the mortgaged premises are situated; but if there be no public newspaper so published, in some public newspaper published daily in the county in which the mortgaged premises are situated or in a public newspaper published daily in the city of Providence; provided however if the mortgaged premises are situated in the town of New Shoreham then in addition to publication in a public newspaper published daily as required above, it shall also be published in a public newspaper published in the town of New Shoreham, and, in the event there is no public newspaper published in the town of New Shoreham, then in a public newspaper distributed in the town of New Shoreham; with power to adjourn such sale from time to time, provided that publishing of the notice shall be continued, together with a notice of the adjournment or adjournments, at least once each week in that newspaper; and in his, her or its or their own name or names, or as the attorney or attorneys of the mortgagor, for that purpose by these presents duly authorized and appointed with full power of substitution and revocation to make, execute and deliver to the purchaser or purchasers at that sale a good and sufficient deed or deeds of the mortgaged premises in fee simple, and to receive the proceeds of such sale or sales, and from such proceeds to retain all sums hereby secured whether then due or to fall due thereafter, or the part thereof then remaining unpaid, and also the interest then due on the proceeds, together with all expenses incident to the sale or sales, or for making deeds hereunder, and for fees of counsel and attorneys, and all costs or expenses incurred in the exercise of such powers, and all taxes, assessments, and premiums for insurance, if any, either theretofore paid by the mortgagee or his or her executors, administrators or assigns, or then remaining unpaid, upon the mortgaged premises, rendering and paying the surplus of the proceeds of sale, if any there be, over and above the amounts so to be retained as aforesaid, together with a true and particular account of the sale or sales, expenses and charges, to the mortgagor, or his, her or its heirs, executors, administrators, successors or assigns; which sale or sales made as aforesaid shall forever be a perpetual bar against the mortgagor and his, her or its heirs, executors, administrators, successors and assigns, and all persons claiming the premises, so sold, by, through or under him or her, them or any of them.

**History of Section.**(P.L. 1927, chi 1056, § 14; P.L. 1932, chi 1952, § 1; P.L. 1934, chi 2120, § 1; G.L. 1938, chi 436, § 13; P.L. 1940, chi 944, § 1; P.L. 1943, chi 1325, § 1; P.L. 1955, chi 3589, § 1; G.L. 1956, § 34-11-

22; P.L. 1988, chi 138, § 1; P.L. 1989, chi 154, § 1; P.L. 1992, chi 224, § 2; P.L. 1993, chi 377, § 1; P.L. 1994, chi 372, § 1; P.L. 2003, chi 233, § 1; P.L.    2003, chi 358, § 1.)

It is obvious that even in 2003, the legislature identified the mortgagee and the lender as the same party.   There is no evidence at all that the legislature envisioned the lender and mortgagee being separate parties.  When this section of the law is read together with the instant mortgage, it is abundantly clear that the mortgagee and lender are the same party.  This is not to say that the mortgage could not be assigned and that the note could not be negotiated.  It is evidence, however, that supports the Plaintiff's argument that the note and mortgage must travel together from beginning to end, and that did not take place in this case.

Finally, when 34-11-24 is read together with the previous two statutes, it is crystalline that the mortgagee and lender have been identified by the legislature as one in the same.  The  statute reads as follows:

> **§ 34-11-24 Effect of assignment of mortgage. –** An assignment of mortgage substantially following the form entitled "Assignment of Mortgage" shall, when duly executed, have the force and effect of granting, bargaining,  transferring and making over to the assignee, his or her heirs, executors, administrators,  and assigns, the mortgage     deed with the note and debt thereby secured, and all the right, title and interest of the  mortgagee by virtue thereof in and to the estate described therein, to have and to hold the mortgage deed with the privileges and appurtenances thereof to the assignee, his or her     heirs,     executors, administrators and assigns in as ample manner as the assignor then holds the same, thereby substituting and appointing the assignee and his or her heirs,  executors, administrators and assigns as the attorney or attorneys irrevocable of the mortgagor under and with all the powers in the mortgage     deed     granted     and     contained. **History of Section.**(P.L. 1927, chi 1056, § 15; G.L. 1938, chi 436, § 14; G.L. 1956, § 34-11-24.)

Clearly, the language that states that an assignment of the mortgage carries with it the note assumed that the mortgagee and note holder were the same party.  When these three portions of the General Laws are read together with the form of mortgage in this case, there can be no other

conclusion than that the mortgagee and lender are identified as the same party. This being the case, it is impossible for a MERS mortgage, where it does not own or possess the note, to be assigned or foreclosed upon in the State of Rhode Island.

The Defendants offer no case law to support their position because there is none; <u>Bucci</u>, does not support this position and it is the well founded argument of the Plaintiff that Judge Silverstein took on the role of "super legislator" when he ruled otherwise. <u>See</u> C.A. PC-2009-3888. His role was to interpret the law, not make law when existing statutes are clear on their face.

Relative to the Defendants' argument that ABC's Bankruptcy does not prevent foreclosure, their argument is without merit. MERS was the nominee of ABC and when ABC went bankrupt, and that "agency like" relationship failed because ABC did not reaffirm its contracts with MERS. MERS would have this Court believe that it is a universal agent for any member of its electronic data registry and that the Plaintiffs' somehow agreed to that plan. The Plaintiffs' did not agree to that claim and MERS cannot serve as nominee of every MERS member as it alleges. The words "Lender's successors and assigns" are merely terms of art in a mortgage and deed and they do not actually purport to convey to some unnamed and unknown third party that may or may not exist in the future, the rights that it has under a promissory note.

On February 12, 2011, a Bankruptcy Court from the Eastern Division of New York addressed this very issue. In the case <u>In re Agard</u>, Feb. 2011, Case No. 810-77338-reg (Bankr. E.D.N.Y. February 11, 2011) the judge analyzed the MERS Membership Rules, the affidavits of MERS Officers and Directors, William Hultman and R.K. Arnold, and the agency and nominee arguments that they consistently put forward, much as it has in this case. The Court held that MERS does not have the authority that it claims. MERS has asserted for years that it has

authority to act as agent for each and every MERS member that claims ownership of a note and mortgage registered on its system. The Court pointed out that this alleged authority is based not in the statutes or case law, but rather derives from the terms and conditions of the MERS membership agreement. See Id. This attorney has argued that MERS has always attempted to circumvent the law and to interpose its construct on cities and towns across Rhode Island. The Agard decision states unequivocally that this position is true. Id.

The Court was clear that it was in agreement with the reasoning and holdings in the cases of Bank of New York v. Alderazi, 900 N.Y.S. 2d 821, 824 (N.Y. SUp. Ct. 2010) and LaSalle Bank , N.A. v. Boulete, No. 41583/07, 2010 WL 3359552 at * 2 (N.Y. Sup. Aug. 26, 2010) where the trial courts concluded in general, that MERS, as a nominee, possesses few or no legally enforceable rights beyond those of a principal whom the nominee serves. Specifically, it stated as follows:

> MERS . . . recorded the subject mortgage as "nominee" for FFFC. The word "nominee" is defined as "[a] person designated to act in place of another, usu. in a very limited way" or "[a] party who holds bare legal title for the benefit of others." (Black's Law Dictionary 1076 [8th ed 2004]). "This definition suggests that a nominee possesses few or no legally enforceable rights beyond those of a principal whom the nominee serves." *(Landmark National Bank v. Kesler,* 289 Kan 528, 538 [2009]). The Supreme Court of Kansas, in *Landmark National Bank,* 289 Kan at 539, observed that:
> The legal status of a nominee, then, depends on the context of the relationship of the nominee to its principal. Various courts have interpreted the relationship of MERS and the lender as an agency relationship. See *In re Sheridan,* 2009 WL631355, at *4 (Bankr. D. Idaho, March 12, 2009) (MERS "acts not on its own account. Its capacity is representative."); *Mortgage Elec. Registrations Systems, Inc. v. Southwest,* 2009 Ark. 152 ___, 301 SW3d 1, 2009 WL 723182 (March 19, 2009) ("MERS, by the terms of the deed of trust, and its own stated purposes, was the lender's agent"); *La Salle Nat. Bank v. Lamy,* 12 Misc.3d 1191[A], at *2 [Sup Ct, Suffolk County 2006]) . . ("A nominee of the owner of a note and mortgage may not effectively assign the note and mortgage to another for want of an ownership interest in said note and mortgage by the nominee.").

The Court wrote that the mortgage, in naming MERS a "nominee" and/or mortgagee of record, did not bestow authority upon MERS to assign the mortgage. See Id. This statement is on all fours with the instant complaint. The Court went on to comment that according to MERS, in addition to the alleged authority granted to it in the Mortgage itself, the documentation of Mortgage comports with all the legal requirements of agency when read in conjunction with the overall MERS system. MERS' argument in the Agard case and the case and bar, and all of the MERS cases pending before this Court at the present time, requires that this Court disregard the specific words in the Assignment of Mortgage or, at the very least, interpret the Assignment in light of the overall MERS System of tracking the beneficial interests in mortgage securities. See Case No. 810-77338. Additionally, in the Agard case and in all of the cases before this Court, MERS wants the Court to look beyond the four corners of the mortgage itself and take into consideration the alleged agency agreements entered into by the lenders participating in the MERS system, including their agreement to be bound by the terms and conditions of membership. This request of the Court is far beyond what is prudent.

MERS has wrongly asserted that each of its member lenders agrees to appoint MERS to act as its agent and MERS memorandum in this case asks the Court to do just that. There is not, however, any proof of any type that contains an explicit reference to the creation of an agency or nominee relationship. The MERS membership agreement does not replace the common law or the Statutes which govern real estate conveyance in the State of Rhode Island. The rules of membership in MERS do not grant any clear authority to MERS to take any action with respect to the mortgages held by MERS members, including but not limited to, executing assignments. This is exactly what is at issue in the case at bar.

Aside from its inappropriate reliance on the RI Statutory definition of "mortgagee", MERS' position that it can be both the mortgagee and an agent of the mortgagee is absurd. This has been argued in every MERS case before this Court. In this case, MERS argues that it was the agent of ABC, but that when ABC went bankrupt, somehow it became the nominee of BAC, I guess. In essence, when MERS assigned to BAC, it was taking direction from a party that no longer had any rights under the note or mortgage. The very assignment in this case proves this absurdity. MERS, not as nominee of any party, but acting on its own behalf, by way of an attorney in Connecticut, allegedly assigned the rights of an unknown party to BAC. There is no agreement in place between ABC and MERS or ABC and BAC to lead to any other conclusion. The documentation on record should lead this court to conclude that no such other agreements actually exist.

The <u>Agard</u> Court went even further and considered a situation where MERS was acting on behalf of the entity which held the note at the time of the assignment. <u>Id</u>. In that situation, the Court held that MERS did not have authority, as "nominee" or agent, to assign the Mortgage absent a showing that it was given specific directions by its principal. <u>Id</u>. In this case, since ABC was bankrupt, that permission would have to come from its Trustee, and there is no evidence to prove that such specific direction exists.

Finally, the <u>Agard</u> Court found that the MERS' theory that it can act as a "common agent" for undisclosed principals is not supported by the law. <u>Id</u>. The Court concluded that the relationship between MERS and its lenders and its distortion of its "alleged" nominee status was appropriately described by the Supreme Court of Kansas as follows: "The parties appear to have defined the word [nominee]in much the same way that the blind men of Indian Legend described

an elephant--their description depended on which part they were touching at any given time."

Landmark Nat'l Bank v. Kesler, 216 P.3d 158 (Kan. 2010).

Finally, in regard to Count III of the Plaintiff's complaint, relative to the allegation that the Plaintiff failed to sufficiently plead the elements of negligent misrepresentation, this complaint, when viewed by the Court, with all factual assertions being taken as true, "plausibly suggest an entitlement to relief. " Ashcroft v. Iqbal, 129 S.Ct. 1937, 1951 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). The Plaintiff has properly pleaded the elements required to make out a claim for Negligent Misrepresentation. At this point, he does not need to prove his case. He just needs to prove that they have pleaded a cause of action properly. The Plaintiffs' complaint clearly set forth the required elements of negligent misrepresentation under Rhode Island Law. To prevail on a negligent misrepresentation claim, Plaintiff must prove 1) Defendant made a false representation of existing facts, 2) that the representation was false when made, 3) the defendant knew or should have known that the information was to be relied upon by plaintiff in a business transaction, 4) that the defendant failed to exercise reasonable care in obtaining or communicating the information, 5) the plaintiff relied on the false representation, and 6) plaintiff suffered some financial loss or harm as a proximate result of the representation. See Focus Investment Associates, Inc. v. American Title Insurance Co., 992 F. 2d 1231 (1st Cir. 1993); Forcier v. Cardello, 173 B.R. 973 (D.R.I. 1994); Restatement (Second) of Torts, §522 (1997). The element of intent is not required to prove negligent misrepresentation and the existence of intent changes the cause of action from negligent misrepresentation to fraudulent misrepresentation. Based upon the foregoing, the 12(b)(6) Motion relative to the count of negligent misrepresentation should be denied. See also Aceves v. U.S. Bank, NA, No. B220922,

(January 27, 2011). (Court determined that bank's breach of promise could amount to cause of action due to Aceves reliance upon the promise and bank's misrepresentation.)

The cases cited by the Defendants including <u>Filippi v. Filippi</u>, 818 A.2d 608, 619 (R.I. 2003), <u>Latham v. Homecomings Financial, LLC</u>, No. SUCV2008-02100-E, 2009, WL 6297593 (Mass. Super. Ct. 2009), and <u>Carney v. Shawmut Bank</u>, 72 Mass. App. Ct. 1117 (2008), all stand for the accepted integration proposition. The Defendants are correct in asserting that nowhere in the loan documents is it expressly stated that a mortgagee must engage in post-default loan modification. In this case however, Aceto was engaged with the Defendants in post-default negotiations. Once that commenced, it is his contention that the Defendant is under a duty to act in good faith. In this case, BAC asked for documents for review and then buried them while they moved forward with an invalid foreclosure action. Aceto reasonably relied upon the representations made by the Defendants and when he found out that the foreclosure was going forward, he was forced to file the instant action.

<div style="margin-left: 40%;">

The Plaintiffs,
By their attorney,

/s/ George E. Babcock, Esq.
_____
George E. Babcock, Esq. #3747
Corey Allard, Esq. # 7476
Carleen N.T. Aubee, Esq. #8463
23 Acorn Street
Providence, RI 02903
401-274-1905
george@babcocklaw.com

</div>

Dated:  February 14, 2011

CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2011, a copy of the foregoing document, filed through the CM/ECF System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies shall be served by first class mail postage prepaid on the parties listed on the NEF as not receiving electronic notice.

/s/ George E. Babcock, Esq.

_____

George E. Babcock, Esquire